UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

       Criminal Case No. 13-20489
       Honorable Linda V. Parker

MARK J. CARPENTER,

       Defendant.
_____/

### OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL OR MOTION FOR RESENTENCING

On December 9, 2014, following a multi-day trial, a jury convicted Defendant Mark Carpenter of one count of mail fraud and thirty-six counts of wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, respectively. This Court sentenced Defendant on May 11, 2015, to a term of imprisonment of 125 months on each count, to run concurrently. (ECF No. 43.) Defendant filed a notice of appeal in the Sixth Circuit Court of Appeals on June 2, 2015. Presently before the Court is Defendant's "Motion for Judgment of Acquittal, or, in the Alternative, Motion for New Trial, or, in the Alternative, Motion for Re-Sentencing," filed October 18, 2015. The United States filed a response to the motion on December 18, 2015. On December 30, 2015, the Sixth Circuit issued a ruling, holding Defendant's appeal in abeyance pending this Court's decision on his motion.

Ruling, *United States v. Carpenter*, No. 15-1641 (6th Cir. Dec. 30, 2015), ECF No. 23. For the reasons that follow, this Court denies Defendant's motion.

## Motion for Judgment of Acquittal

Defendant first seeks a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that there was insufficient evidence for the jury to find him guilty of mail or wire fraud. Specifically, Defendant contends that the evidence presented at trial failed to show that he acted knowingly and intentionally, with the intent to defraud investors.

Rule 29 provides that a court may enter a judgment of acquittal of any offense for which the evidence presented at trial was insufficient to sustain a conviction.[1] Fed. R. Crim. P. 29(a). The court applies the following standard when evaluating a Rule 29 motion: " '[W]hether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). The courts must "view both circumstantial and direct evidence in a light most favorable to the prosecution." *Id.* (citation omitted). " 'Circumstantial evidence alone, if substantial and competent,

---

[1] Generally, a Rule 29 motion must be brought within fourteen days after a guilty verdict. Fed. R. Crim. P. 29(c)(1). This Court granted Defendant extensions of time to file his motion due to the replacement of his counsel after the verdict and before sentencing and after sentencing. (ECF Nos. 44, 63.)

2

may support a verdict and need not remove every reasonable hypothesis except that of guilt.' " *Id.* (quoting *United States v. Talley*, 194 F.3d 758, 765 (6th Cir. 1999), cert. denied 528 U.S. 1180 (2000)) (additional citation omitted). The court must "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Selgado*, 250 F.3d 438, 446 (6th Cir. 2001).

As this Court instructed the jury, in order to convict Defendant of wire fraud, it had to find beyond a reasonable doubt that: (1) he knowingly participated in or devised a scheme to defraud in order to obtain money or property; (2) the scheme included a material misrepresentation or concealment of a material fact; (3) Defendant had the intent to defraud; and (4) he used wire communications in interstate commerce in furtherance of the scheme. (ECF No. 20 at Pg ID 88.) The Sixth Circuit "has interpreted the mail-fraud and wire-fraud statutes as having essentially the same elements, except for the use of the mails versus the wires." *United States v. Kennedy*, 714 F.3d 951, 958 (6th Cir. 2013) (citing *United States v. Bibby*, 752 F.2d 1116, 1126 (6th Cir. 1985)). In his pending motion, Defendant only challenges the sufficiency of the evidence to show that he *knowingly and intentionally* participated in a scheme to defraud. There was sufficient evidence from which the jury could find his knowing and intentional participation, however.

The jury convicted Defendant of fraud arising from two different schemes. The first involved the representations and omissions he made while soliciting

investors for Ron Brito's GetMoni Ponzi scheme, which solicited investors in an Arizona gold mine which was dormant and never produced any gold. (ECF No. 56 at Pg ID 996, 1021.) The second fraud involved the false statements Defendant made after he stopped forwarding investor money to Brito and kept the money in his own accounts.

The following evidence supports the jury's finding that Defendant knowingly and intentionally participated in Brito's Ponzi scheme. Defendant first met Brito in June 2008, at which time they met for drinks. (*Id*. at Pg ID 1085.) At this meeting, Defendant and Brito discussed Defendant raising investor money for Brito's GetMoni scheme and the mine. (*Id*. at Pg ID 1000-02.) Brito agreed to pay Defendant a five percent commission on any investor money Defendant raised for the scheme. (*Id*. at Pg ID 1003.)

Within a few weeks of their meeting, Defendant began sending investor money to Brito. (*Id*. at Pg ID 1085.) To induce his clients to invest their money in the gold mine, Defendant told them that their money would be invested in the mine, he had seen the mine, and the mine was in operation. (*Id*. at Pg ID 974; ECF No. 54 at Pg ID 625, 704; ECF No. 55 at Pg ID 777, 902, 915.) Defendant also told his clients he had worked with Brito on numerous occasions and Brito was trustworthy. (ECF No. 56 at Pg ID 941.) He further told investors that their investments were simply bridge loans; that their principal was guaranteed; and he

4

issued promissory notes with outrageous promised return rates.  (ECF No. 53 at Pg ID 482; ECF No. 54 at Pg ID 715; ECF No. 55 at Pg ID 848.)

In fact, prior to their June 2008 meeting, Defendant had never met nor worked with Brito.  (ECF No. 56 at Pg ID 1004.)  Despite assuring investors that Brito was trustworthy, Defendant had been given reason to suspect that Brito was a "scammer," well before Defendant stopped taking money from investors to invest in Brito's scheme.  (*Id*. at Pg ID 1013.)  Defendant also had never seen the mine and it never produced gold.  (ECF No. 54 at Pg ID 1002, 1021.)

Further, rather than investing money in the mine, Defendant wired all of his investors' money directly into Brito's GetMoni.com account.  (*Id*. at Pg ID 1007.)  Defendant also obtained promissory notes from Brito which promised rates of return to Defendant that were almost twice the return rates promised to investors.  (ECF No. 55 at 782.)  Defendant never disclosed the promised returns he obtained from Brito to investors.  (*Id*.)  Defendant also never disclosed that he was receiving a five percent commission.  (*Id*. at Pg Id 1007.)

With respect to the second fraudulent scheme, after October 2008, Defendant continued to induce clients to invest in the gold mine (*see, e.g.,* ECF No. 57 at Pg ID 1197); however, Defendant never forwarded the investments to GetMoni, Brito, or the mine.  (ECF No. 54 at Pg ID 663-64; ECF No. 57 at Pg ID 1257.)  The last time Defendant wired any money to Brito was on October 30,

2008. (ECF No. 54 at Pg ID 465-66.) Thereafter, although Defendant raised slightly more than a million dollars from his clients to invest in the mine, no funds were actually invested. (ECF No. 57 at Pg ID 1254, 1257.) Federal Bureau of Investigation ("FBI") Special Agent Bradford Byer testified that based on the FBI's review of bank records for accounts associated with Defendant, a portion of this money was used by Defendant to pay earlier investors and a portion was used to pay Defendant's personal expenses. (ECF No. 57 at Pg ID 1256-57, 1260-63.) Nevertheless, Defendant still sought his commission from Brito for the investments Defendant obtained. (*Id.* at 1262-63.)

When new money from investors began to dry up-- thus depriving Defendant of funds to pay the returns owed to earlier investors-- and investors starting demanding their returns, Defendant organized conference calls with himself, Brito, and investors to provide investors with excuses for the delay in their returns. (ECF No. 56 at Pg ID 1033.) According to Brito, he and Defendant regularly spoke by phone to discuss what their options were to raise funds to pay off investors and avoid the investors filing charges against them. (*Id.* at 1036.) For months and years, Defendant provided investors with a myriad of excuses as to why they were not being paid: that gold was being mined in a way that would be patented; that other investors were going to buy the patent; that money was tied up

6

in different countries; and that proceeds were being used to buy Brazilian bonds. (*See, e.g.*, ECF No. 55 at 864-879.)

Viewed in a light most favorable to the government, these facts support the jury's finding that Defendant knowingly participated in two schemes to defraud investors. As the Sixth Circuit has observed, "because it is difficult to prove intent to defraud from direct evidence, a jury may consider circumstantial evidence of fraudulent intent and draw reasonable inferences therefrom. Intent can be inferred from efforts to conceal the unlawful activity, from misrepresentation, from proof of knowledge, and from profits." *United States v.* Davis, 490 F.3d 541, 549 (6th Cir. 2007) (internal quotation marks, citation, and brackets omitted). The evidence recited above reflects the use of each of these mechanisms by Defendant first to secure his clients' investments and the commission he obtained in return and then to continue receiving their investments which he never actually invested but used for other purposes. The Court therefore is denying Defendant's motion for judgment of acquittal.

## Motion for New Trial

Defendant alternatively asks the Court to vacate the judgment and grant him a new trial or re-sentencing pursuant to Federal Rule of Criminal Procedure 33. Rule 33 grants a trial court with the discretion to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The rule

does not define interest of justice and the courts have had little success in trying to generalize its meaning." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010).  However, it is "widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred." *Id*.  It is the defendant's burden to prove the need for a new trial and the Sixth Circuit has indicated that such motions "should be granted sparingly and with caution." *United States v. Turner*, 995 F.2d 1357, 1364 (6th Cir. 1993).

Defendant contends that the Court should grant him a new trial because the jury's verdict was against the great weight of the evidence, specifically with regard to the jury's finding that he knowingly and intentionally engaged in a scheme to defraud investors.  He also argues that a new trial or re-sentencing should be granted because he was denied the effective assistance of counsel in violation of his Sixth Amendment rights.  For the reasons set forth above, the Court does not find that the interests of justice warrant granting Defendant Rule 33 relief based on his sufficiency of the evidence argument.  With respect to his ineffective assistance of counsel argument, Defendant fails to satisfy his burden of showing that counsel was ineffective or that any ineffectiveness caused him prejudice.

To establish that he was denied the effective assistance of counsel in violation of the Sixth Amendment, Defendant must show that his counsel's performance fell below an objective standard of reasonableness and that this

ineffectiveness caused him prejudice. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In other words, Defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* Defendant asserts in his Rule 33 motion, as he asserted at trial before closing arguments (ECF No. 58 at Pg ID 1296-98), that his trial counsel was ineffective for "failing to fully examine his financial records and the summary exhibit created by the FBI and in failing to discover and point out to the jury errors and omissions in the exhibit or to cross examine prosecution witnesses about them" and "to call witnesses on his behalf who would have testified favorably." (ECF No. 64 at Pg ID 1470.) Defendant also claims that trial counsel "in effect, denied him his right to testify." (*Id.* at Pg ID 1471.)

   Defendant does not identify any specific errors in the representation of his financial records or the FBI's summary exhibit which defense counsel missed. He also fails to explain how defense counsel could have more effectively cross-examined witnesses. Defendant also does not identify by name any witness who his attorney should have called to testify on his behalf or what that witness would have said in support of his defense. As such, he fails to demonstrate that counsel erred or that such error prejudiced his defense.

With respect to Defendant's claim that his trial counsel denied him the right to testify, Defendant was questioned on the record about his right to testify at the end of the government's case. (ECF No. 57 at Pg ID 1275.) Defendant expressly stated that (1) he understood he had the right to decide whether to testify; and (2) it was his choice not to testify. (*Id.*) Defendant does not otherwise explain how his trial counsel interfered with his right to testify. Thus, he fails to show that defense counsel's ineffectiveness in some way denied him the right to testify.

Defendant also claims that he was denied the effective assistance of counsel at sentencing. This claim is based on the fact that Jerome Sabbota, the attorney appointed to represent Defendant at sentencing after his trial counsel moved to withdraw due to a breakdown in the attorney-client relationship, previously represented Defendant's co-defendant, Thomas Moore, in an earlier criminal proceeding related to the GetMoni scheme. Defendant claims that Attorney Sabbota was ineffective due to his failure to file post-trial motions on Defendant's behalf. Defendant maintains that the Court should have inquired about the propriety of Attorney Sabbota's joint representation of Defendant and Moore pursuant to Federal Rule of Criminal Procedure 44(c)(2).

As an initial matter, the plain language of Rule 44 did not require the Court to inquire into Attorney Sabbota's representation. The rule provides in relevant part:

    (c) Inquiry Into Joint Representation.

        (1) Joint Representation. Joint representation occurs when:

            (A) two or more defendants have been charged jointly under Rule 8(b) or have been joined for trial under Rule 13; and

            (B) the defendants are represented by the same counsel, or counsel who are associated in law practice.

Fed. R. Crim. P. 44.  Defendant was not charged jointly or joined for trial *in the proceedings before this Court*.  In any event, Defendant fails to indicate how Attorney Sabbota's previous representation of Moore prejudiced Defendant in these proceedings or was in conflict with his representation of Defendant at sentencing.

    Attorney Sabbota filed a sentencing memorandum, objections to the presentence report, and successfully advocated for a sentence below the guideline range.  (ECF No. 39; ECF No. 59 at Pg ID 1421.)  Defendant claims only that Attorney Sabbota failed to file post-conviction motions.  The Court, however, granted Defendant additional time to file such motions and, after Defendant's current attorney was appointed to represent him, post-trial motions were filed on Defendant's behalf.  Thus, Defendant fails to demonstrate any prejudice with respect to his claim of error based on Attorney Sabbota's failure to file post-trial motions.

11

For these reasons, the Court is denying Defendant's motion for a new trial or re-sentencing pursuant to Rule 33.

Accordingly,

**IT IS ORDERED** that Defendant's motion for judgment of acquittal or, in the alternative, for new trial or re-sentencing is **DENIED**.

                                        s/ Linda V. Parker
                                        LINDA V. PARKER
                                        U.S. DISTRICT JUDGE

Dated: April 26, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, April 26, 2016, by electronic and/or U.S. First Class mail.

                                        s/ Richard Loury
                                        Case Manager