UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                                    Criminal Case No. 13-20489
v.                                Honorable Linda V. Parker

MARK J. CARPENTER,

      Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

On December 9, 2014, a jury convicted Defendant Mark J. Carpenter of one count of mail fraud and thirty-six counts of wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.  (ECF No. 43.)  This Court sentenced Defendant to 125 months on each count, to be served concurrently.  (*Id.*)  Defendant's convictions and sentence were affirmed on appeal.  *United States v. Carpenter*, 676 F. App'x 397 (2017).  The matter is presently before the Court on Defendant's motion for post-conviction review pursuant to 28 U.S.C. § 2255, filed August 7, 2017.  (ECF No. 81.)

In his § 2255 motion, Defendant argues that his trial counsel was ineffective due to his failure to interview and call certain witnesses and explain to Defendant the tactical advantages and disadvantages of exercising his right to testify.  (*Id.*)  In

response to Defendant's motion, the Government filed its own motion asking the Court to find that Defendant waived the attorney-client privilege. (ECF No. 87.) The Court granted the Government's motion on November 16, 2017, and ordered the Government to file a response to Defendant's motion on or before January 16, 2018. (ECF Nos. 90, 91.) The Government filed its response brief on the due date; Defendant filed a reply brief on January 22, 2018. (ECF Nos. 92, 93.)

### Evidentiary Hearing

While Defendant requests an evidentiary hearing to address his motion, the Court does not find a hearing necessary.

The court must hold an evidentiary hearing in § 2255 proceedings in which a factual dispute arises to determine the truth of the petitioner's claims. *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (citing *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). The disputed fact must be material to necessitate a hearing. *See Taylor v. United States*, 287 F.3d 658, 660 (7th Cir. 2002); *United States v. Saucedo-Avalos*, -- Fed. App'x --, No. 2018 WL 4924599, at *3 (10th Cir. 2018). The Sixth Circuit has held that the burden to demonstrate entitlement to an evidentiary hearing "is relatively slight." *Valentine*, 488 F.3d at 333. Nevertheless, no hearing is required if "'the record conclusively shows that the petitioner is entitled to no relief.'" *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)); *see also* 28 U.S.C. § 2255(b). "Stated another

way, 'no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Valentine*, 488 F.3d at 333 (quoting *Arredondo*, 178 F.3d at 782).

There are no material factual disputes raised by Defendant's motion that require an evidentiary hearing. As will be discussed *infra*, the record conclusively establishes that Defendant is not entitled to relief. The Court therefore is denying Defendant's request for a hearing.

## Standard of Review

A movant is entitled to relief under § 2255 "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. In order to prevail as to alleged constitutional errors, a defendant must establish "an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citation omitted). Where the defendant alleges a non-constitutional error, he must establish a "'fundamental defect which inherently results in a complete miscarriage

of justice,' or, an error so egregious that it amounts to a violation of due process."

*Id.* (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

## Ineffective Assistance of Counsel Generally

Defendant must satisfy the two-prong test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984), to demonstrate that he was denied the effective assistance of trial counsel in violation of his constitutional rights. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). Defendant must show that: "(1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different." *Id.* at 736 (citing *Strickland*, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*

When evaluating counsel's performance under *Strickland*'s first step, the court must apply a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Courts should "not indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors." *Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006) (internal quotation marks and citation omitted).

Counsel's tactical decisions are presumed to be part of sound trial strategy.

*Varden v. Wainwright*, 477 U.S. 168, 185-87 (1986).

### Trial Counsel's Alleged Failure to Interview and Call Defense Witnesses

Defendant contends that his trial counsel was ineffective due to his failure to interview and call the following individuals as witnesses at trial: John Ahrens, Ann Marie Sheldon, James Smith, Ted Gleason, and Debbie Gleason. According to Defendant, their testimony would have established that he was a victim of the Ponzi scheme run by Ron Brito and Thomas Moore and did not intend to deprive any investors of their money.

"The Constitution does not oblige counsel to present each and every witness that is suggested to him." *Blackmon v. Williams*, 823 F.3d 1088, 1103 (7th Cir. 2016) (quoting *United States v. Berg*, 714 F.3d 490, 499 (7th Cir. 2013)) (additional quotation marks and citation omitted). Nevertheless, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Therefore, "[i]f counsel has investigated witnesses and consciously decided not to call them, the decision is probably strategic. An outright failure to investigate witnesses, however, is more likely to be a sign of deficient performance." *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005) (citing *Rompilla v. Beard*, 545 U.S. 374, 388 (2005)); *see also United States v. Luciano*, 158 F.3d 655, 660 (2d

Cir. 1998) ("The decision not to call a particular witness is typically a question of trial strategy that appellate courts are ill-suited to second-guess."); *Blanco v. Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel."); *Tosh v. Lockhart*, 879 F.2d 412, 414 (8th Cir. 1989) ("[T]he decision not to use alibi testimony may reflect the reasonable exercise of judgment in view of the attorney's concern that the testimony would be conflicting … or otherwise unfavorable." (internal citations omitted).

## John Ahrens

In his § 2255 motion, Defendant asserts that Ahrens would have testified to the following: (1) he highly recommended that Defendant invest in Brito's and Moore's gold mine ventures; (2) he had clients who visited the gold mine and found it in good order; (3) he told Defendant he worked with Brito over the course of several years, had participated in several business ventures with Brito, had clients that had done the same, his and his investor's investments were successful, and Brito was always honest and forthcoming whenever he did business with him; and (4) Defendant conferred with him on several occasions to check the legitimacy of Brito's excuses for why he could not pay his investors and he always told Defendant that Brito's excuses were legitimate. (Def.'s Br. in Supp. of Mot. at 11-12, ECF No. 81 at Pg ID 1600-01.) Defendant does not present evidence to

support these assertions, however. He states in his motion that he mailed a letter to an address he believes is associated with Ahrens, requesting an affidavit from him, but Defendant has not received a response. (*Id.* at 11 n.1, Pg ID 1600.)

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Defendant's assertions as to what Ahrens would have testified to—assuming he would have not invoked his right not to testify and implicate himself in the Ponzi scheme—are too speculative to entitle Defendant to relief. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). In the absence of an affidavit from Ahrens, Defendant cannot show that he was prejudiced by trial counsel's failure to present him as a witness. *Clark*, 490 F.3d at 557.

In any event, the Court does not find a reasonable probability that the result of the proceeding would have been different if Ahrens had testified to the facts set forth by Defendant. Defendant believes that Ahrens' testimony would have convinced a jury that Defendant was duped into believing the gold mine was a legitimate investment. The Court finds this highly unlikely considering the false representations Defendant made to his investors (e.g., that he personally visited the mine) and Defendant's experience as an investment advisor. Notably, Defendant had just withdrawn his clients' investments in a similar scheme involving fraudulent crude oil bonds. While Defendant may have been naïve to such

schemes when he invested his clients' funds in the oil-bonds Ponzi scheme, he clearly should have known not to trust representations like those allegedly from Ahrens the second time around. Moreover, Defendant continued taking money from his clients to invest in the gold mine even after he had been given reason to suspect the investment was a scam.

### Anna Sheldon

Defendant does present an affidavit from Anna Sheldon, an investor in the gold mine scheme. (Def.'s Mot., Att. 1, ECF No. 81 at Pg ID 1611.) According to Sheldon, she lost thousands of dollars in the investment and Defendant advised her that "it wasn't wise to invest any more than [she] could afford to lose." (Sheldon Aff. ¶¶ 3, 5, ECF No. 81 at Pg ID 1611.) Sheldon further states that Defendant made it very clear that he would receive a commission on her investment and a greater interest rate than she would receive. (*Id.* ¶ 4.) According to Sheldon, Defendant never told her that he had visited the gold mine or saw that it was operational. (*Id.* ¶ 6.) There is not a reasonable probability that this testimony would have affected the jury's verdict.

This is because Sheldon's testimony would not have negated what Defendant told or failed to tell other investors—no less than twenty-three who testified at trial. Sheldon does not claim that she was present during Defendant's conversations with other investors or that his representations to her occurred during

a conference call with other investors.  As such, Sheldon's proposed testimony would not undermine the evidence supporting Defendant's conviction for fraud based on his representations to other investors.

## James Smith

Defendant also provides an affidavit from James Smith in support of his request for § 2255 relief.  (Def.'s Mot., Att. 2, ECF No. 81 at Pg ID 1613-14.)  There is a factual dispute as to whether trial counsel interviewed Smith.  (*Compare* Def.'s Reply, Att. 2, ECF No. 93 at Pg ID 1684 *with* Gov'ts Resp., Ex. 1 ¶ 2(C), ECF No. 92-2 at Pg ID 1667.)  Defendant acknowledges, however, that trial counsel decided not to call Smith as a witness after receiving an investor list that outlined Smith's investment return, which was substantially more than other investors.[1]  (*See* Def.'s Br. in Supp. of Mot. at 3, ECF No. 93 at Pg ID 1671.)  According to trial counsel, he advised Defendant that it would not be advantageous to call Smith as a trial witness because he would not be credible due to the large return he obtained.  (Wishnow Aff. ¶ 2(C), ECF No. 92-2 at Pg ID 1667.)  This seems to be a reasonable trial strategy that should not be second-guessed.

---

[1] The Government represented that Smith (through his business) invested $18,175 with Defendant and received $314,851.07 in return.  (5/11/15 Tr. at 40, ECF No. 59 at Pg ID 1416.)  Defendant asserts that if his trial counsel had interviewed Smith, counsel would have learned that Smith's investment returns were "nowhere near the amounts mentioned in the investor list that [defense counsel] reviewed."  (Def.'s Reply Br. at 3, ECF No. 93 at Pg ID 1671.)  Defendant presents no evidence to support this assertion, however.

Even if this was not a reasonable trial strategy, there is not a reasonable probability that Smith's purported testimony would have changed the outcome of Defendant's trial. Like Sheldon, Smith's assertions do not undermine the testimony of other investors of what Defendant represented or failed to tell them. It also is not probable that reasonable jurors would conclude from Smith's testimony, in light of the other evidence introduced at trial, that Defendant was an innocent victim of the Ponzi scheme.

### Debra and Ted Gleason

There is a factual dispute as to whether Defendant told trial counsel that he wanted Debra or Ted Gleason called as witnesses. However, even if Defendant did make the request, the Gleasons' assertions about what they would have testified to are similar to Sheldon's and/or Smith's. For the reasons discussed above, that testimony would not have undermined the testimony of other investors. Moreover, Debra Gleason is Defendant's mother and Ted Gleason is Defendant's step-father. As such, their interests and biases in favor of Defendant are readily apparent. "[I]t is not ineffective assistance for trial counsel to decide not to call a defense witness whose bias or interest in favor of the defendant will be obvious to the jury." *Jones v. Toombs*, Nos. 93-1153, 98-1154, 1993 WL 503083, at *4 (6th Cir. Dec. 7, 1993) (citing *United States v. Curtis*, 742 F.2d 1070, 1074-75 (7th Cir. 1984), *cert. denied* 475 U.S. 1064 (1986)).

### Trial Counsel's Alleged Failure to Advise Defendant Regarding the Advantages and Disadvantages of Testifying

Defendant does not contend that trial counsel failed to advise him of his right to testify or remain silent; rather, Defendant contends that counsel failed to discuss the strategic implications of each choice.[2]  According to Defendant, if counsel had adequately explained those implications, Defendant would have chosen to testify and would have presented exculpatory information to the jurors.

Defendant fails to explain what trial counsel failed to convey to him that would have been relevant to his decision whether to testify.  According to defense counsel, Defendant specifically indicated that he would not testify because of his experience sitting as a juror in a criminal case where the defendant testified to his detriment.  (Wishnow Aff. ¶ 1(D), ECF No. 92-2 at Pg ID 1666.)  Defendant's self-serving affidavit in which he now claims he would have testified had he known something different "must be viewed with great skepticism." *Freeman v. Trombley*, 483 F. App'x 51, 58 (6th Cir. 2012).

### Conclusion and Certificate of Appealability

For the reasons stated, the Court concludes that Defendant fails to show that his trial counsel provided ineffective assistance in connection with individuals

---

[2] On the record, trial counsel asked Defendant if he understood that he has the right to testify on his own behalf.  (12/8/14 Trial Tr. at 1077, ECF No. 57 at Pg ID 1275.)  Defendant affirmed that he understood his right and was choosing not to testify.  (*Id.*)

Defendant claims should have been called as witnesses and advising Defendant regarding his right to testify or remain silent. Defendant therefore is not entitled to relief under § 2255.

Defendant cannot appeal this decision unless he first obtains a certificate of appealability under 28 U.S.C. § 2253. *See* Fed. R. App. P. 22(b)(1). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. Governing § 2255 Cases 11(a).

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires Defendant to show "that reasonable jurists could debate whether (or, for that matter, agree that) [his motion] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). The court is satisfied that jurists of reason would not find its ruling debatable. A certificate of appealability is therefore not warranted in this case.

Accordingly,

**IT IS ORDERED** that Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 81) is **DENIED**;

**IT IS FURTHER ORDERED** that the Court declines to issue Defendant a certificate of appealability.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: January 16, 2019

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, January 16, 2019, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager